Balgobin v State of New York (2019 NY Slip Op 00013)





Balgobin v State of New York


2019 NY Slip Op 00013


Decided on January 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 3, 2019

526125

[*1]EDSTAN S. BALGOBIN, Appellant,
v
STATE OF NEW YORK, Respondent.

Calendar Date: November 15, 2018

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


Edstan S. Balgobin, New York City, appellant pro se.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from an order of the Court of Claims (Collins, J.), entered April 3, 2017, which, among other things, granted defendant's motion for summary judgment dismissing the claim.
Claimant filed this claim seeking $1,500 per week for life in satisfaction of an instant scratch-off lottery ticket that he purchased in October 2013. Claimant alleges that, when he attempted to claim his prize in April 2015, employees of the State Gaming Commission (hereinafter the Commission) — the entity charged with operating the Division of the Lottery (hereinafter the Division) — refused to honor the ticket. After retaining the ticket for further review, the Commission determined that the unique validation number on claimant's ticket did not correspond with the grand prize of $1,500 per week for life in the Division's official list of winning validation numbers, thus rejecting claimant's subject ticket as winning the grand prize [FN1]. After issue was joined, defendant moved for summary judgment dismissing the claim. Claimant thereafter moved for summary judgment in his favor, which defendant opposed. Ultimately, the Court of Claims denied claimant's motion and granted defendant's motion. Claimant appeals, and we affirm.
Pursuant to Tax Law § 1604 (a) (4), the Division is authorized "to promulgate regulations concerning the establishment and operation of the state lottery, including '[t]he manner of selecting the winning tickets'" (Consola v State of New York, 84 AD3d 1557, 1558 [2011]). "Knowledge of the regulations is presumed and the regulations are strictly construed and will be given the binding effect of the law unless they are found to be unreasonable" (Consola v State of New York, 84 AD3d at 1558; see Ramesar v State of New York, 224 AD2d 757, 759 [1996], lv denied 88 NY2d 811 [1996]). Importantly, these regulations "are binding on both the agency and the person affected" (Ramesar v State of New York, 224 AD2d at 759). [*2]This Court has recognized the "'limited power of the court in cases such as this'" (id., quoting Molina v Games Mgt. Servs., 58 NY2d 523, 529 [1983]).
In support of its motion for summary judgment, defendant initially relies on the ticket itself. Turning first to Game 2,[FN2] the instructions provide, "Match the WINNING NUMBER to any of YOUR NUMBERS, win prize shown. Reveal a '3X' symbol, win triple the prize shown. If your prize is 'LIFE,' win $1,500 a week for life!" Defendant does not dispute that the prize symbol of "LIFE" appears in Game 2, but contends that, to win that prize, the play symbol corresponding to the "LIFE" prize symbol must match the "winning number" listed on that same game. Inasmuch as the "winning number" in Game 2 is "9" and the play symbol corresponding to the "LIFE" prize symbol is "1," claimant is not entitled to the grand prize for Game 2. Similarly, the Game 3 instructions state, "Reveal a '[roll-of-cash]' symbol, win prize shown. Reveal a '5X' symbol, win 5 times the prize shown. If your prize is 'LIFE,' win $1,500 a week for life!" As such, to be a grand prize-winning ticket, there must be a "roll-of-cash" play symbol directly above the prize symbol "LIFE." However, on claimant's ticket, there is a "rainbow" play symbol directly above the "LIFE" prize symbol — signifying that claimant did not win the grand prize. However, as per the written instructions on the ticket, because the sixth panel on Game 3 displays the play symbol "5X" directly above the "$5.00" prize symbol, claimant has won a $25 prize.[FN3]
Defendant also submitted the affidavit of Ken Vanderwal, an attorney employed in the Counsel's Office of the Commission, the affidavit of Lillian Lanza, a senior investigator for the Commission, and a copy of a Reconstruction Report of the ticket performed at Lanza's request [FN4]. These affidavits and the Reconstruction Report confirm that claimant has not won the grand prize. Also, pursuant to the relevant regulations, to be a valid instant lottery winning ticket, "[t]he validation number of an apparent winning ticket shall appear on the [D]ivision's official list of validation numbers of winning tickets" (9 NYCRR 5006.8 [q]). As affirmed by both Vanderwal and Lanza, "[t]he validation number on the ticket purchased by [claimant] corresponds with a $25.00 prize in the [Division's] validation records, and such records do not indicate that the ticket is a top prize-winning ticket." Therefore, the evidence submitted by defendant "was sufficient to meet defendant's threshold burden of establishing its right to judgment as a matter of law and shifted the burden to claimant to demonstrate the existence of a triable issue of fact" (Consola v State of New York, 84 AD3d at 1559 [internal citation omitted]; see CPLR 3212 [b]).
In opposition to defendant's summary judgment motion, claimant simply filed his own motion for summary judgment in which he asserts, without evidentiary support, that the rules of the lottery ticket should be construed in his favor. Specifically, claimant argues that, because Game 2 and Game 3 provide, "If your prize is 'LIFE,' win $1,500 a week for life!" he has won under both games because the prize symbol of "LIFE" appears. He asserts that the lack of any conjunction in the instructions supports that there is no requirement that a winning play symbol correspond with the prize symbol of "LIFE" to win the grand prize. Simply put, we find this interpretation of the rules of Game 2 and Game 3 to be incorrect. Taken in a reasonable context, the only discernible view under the circumstances where claimant would have actually won the grand prize is that, if — and only if — in Game 2, the play symbol corresponding with the prize symbol of "LIFE" matched the winning number, and, in Game 3, the play symbol corresponding to the prize symbol of "LIFE" was the "roll-of-cash" symbol.
Further, contrary to claimant's contention that any ambiguity in the instructions should be resolved in his favor under contract principles, the regulations promulgated by the Commission governing lottery tickets are to be strictly construed and given the binding effect of the law (see Molina v Games Mgt. Servs., 58 NY2d at 529; Consola v State of New York, 84 AD3d at 1558; Ramesar v State of New York, 224 AD2d at 759). Finally, inasmuch as we do not find these administrative regulations to be "so lacking in reason . . . that they are essentially arbitrary," we decline claimant's invitation to invalidate them (Molina v Games Mgt. Servs., 58 NY2d at 549 [internal quotations marks, brackets and citation omitted]). Accordingly, the Court of Claims properly granted defendant's motion for summary judgment dismissing the claim. We have reviewed claimant's remaining contentions and find them to be without merit.
Garry, P.J., Egan Jr., Lynch and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Claimant's ticket was, however, listed as a $25 prize winner.

Footnote 2: Claimant is not contesting Game 1.

Footnote 3: In an April 2015 letter, claimant has refused to accept the $25 prize.

Footnote 4: The Reconstruction Report was prepared by the Commission by Scientific Games International, the sole contractor that develops the instant scratch-off game in conjunction with the Commission and manufactures all tickets for such games.